IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CARLA JEAN CARVALHO, | ) | Civil No. 16-00363 KJM |
| | ) | |
| Plaintiff, | ) | ORDER AFFIRMING DECISION OF |
| | ) | SOCIAL SECURITY COMMISIONER |
| vs. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Social Security Commissioner, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>ORDER AFFIRMING DECISION OF SOCIAL SECURITY COMMISIONER</u>

This case involves Plaintiff Carla Jean Caravalho's[1] ("Plaintiff")

appeal of the Social Security Administration Commissioner's denial of Social

Security disability insurance benefits to Plaintiff.  Plaintiff filed her Opening Brief

on December 15, 2016.  ECF No. 21.  Defendant Nancy A. Berryhill, Acting

Social Security Commissioner ("Defendant"), filed her Answering Brief on

February 27, 2017.  ECF No. 25.  Plaintiff filed her Reply Brief on March 15,

2017.  ECF No. 26.

---

[1] The Court notes that the Complaint in this matter indicates that Plaintiff's name
is "Carla Jean Carvalho."  *See* ECF No. 1 at 1.  The parties' subsequent filings,
however, refer to Plaintiff as "Carla Jean Caravalho."  *See, e.g.*, ECF No. 16.  To
avoid confusion, the Court will refer to Ms. Caravalho as "Plaintiff."

The Court held a hearing on this matter on May 24, 2017. Danielle

R. Beaver, Esq. appeared on behalf of Plaintiff. Asim H. Modi, Esq. and Edric

M. Ching, Esq. appeared on behalf of Defendant. After carefully considering the

memoranda, arguments, and the record in this case, the Court AFFIRMS the

decision of the Commissioner.

I.     BACKGROUND

A.     Plaintiff's Application for Social Security Disability Insurance Benefits

On February 21, 2013, Plaintiff filed an application for Social

Security disability insurance benefits, alleging that she became disabled on or

about May 5, 2012.[2] AR at 134-35.[3] On or around September 13, 2013, the Social

Security Administration ("SSA") sent Plaintiff a Notice of Disapproved Claim,

informing Plaintiff that she did not qualify for benefits because she was not

disabled under the SSA's rules. *See id.* at 83-86. The Notice of Disapproved

---

[2] Plaintiff initially asserted that her disability began on October 31, 2011. *See* ECF
No. 21 at 10. Subsequently, at the hearing before the Administrative Law Judge,
Plaintiff amended her date of disability to May 5, 2012. *See id.*; *see also* ECF
No. 17, Administrative Record ("AR"), at 30.

[3] According to the exhibits list included in the record, Exhibit 1D (AR pages 134-
35) is entitled "Application for Disability Insurance Benefits." AR at 22. The
Court notes, however, that Exhibit 1D contains a document that is actually entitled,
"Application Summary for Disability Insurance Benefits" ("Application
Summary"). *See id.* at 134. Although the Application Summary is dated February
22, 2013, and appears to indicate that Plaintiff completed her application that same
date, other documents in the record reflect Plaintiff's application filing date as
February 21, 2013. *See, e.g.*, *id.* at 70, 82, 160. Accordingly, this Court will also
treat February 21, 2013 as Plaintiff's application filing date.

Claim stated that, based on Plaintiff's records, the SSA concluded that Plaintiff's alleged condition "was not disabling on any date through 6/30/13, when [she was] last insured for disability benefits." *Id.* at 83.

On or around October 23, 2013, Plaintiff requested reconsideration of the SSA's initial denial of disability benefits. *See id.* at 89. Plaintiff did not submit additional evidence in connection with her request for reconsideration. *See id.* at 90. The SSA subsequently sent Plaintiff a Notice of Reconsideration, dated January 30, 2014, denying her request for disability benefits after reconsideration of her claim. *See id.* at 90-94. The Notice of Reconsideration stated, "Someone who did not make the first decision reviewed your case . . . and found that our first decision was correct." *Id.* at 90.

B.   Plaintiff's Alleged Pain and Treatment

Plaintiff's disability claim is based upon her alleged back and leg pain, as well as other related conditions. *See id.* at 164. According to Plaintiff's medical records, Plaintiff began seeking treatment for her pain from David Arthurs, D.O. in May 2012. *See id.* at 246-48. Plaintiff thereafter had appointments with Dr. Arthurs approximately once a month through June 2014. *See id.* at 243-81, 308-42. Dr. Arthurs made treatment notes for each of these appointments with Plaintiff. *See id.*

Dr. Arthurs' earliest treatment note for Plaintiff is dated May 23, 2012, and mentions the results of a 2005 MRI scan ("2005 MRI") indicating that Plaintiff had "a ruptured L5-S1 disc with right-sided nerve compression." *Id.* at 246. The 2005 MRI is part of the record in this case. *See id.* at 236-42. Throughout his treatment of Plaintiff, Dr. Arthurs prescribed various pain medications to Plaintiff. *See, e.g.*, *id.* at 247, 256, 258, 314.

In February 2013, Plaintiff fell and sustained injuries to her left ankle and toes. *See id.* at 255. According to Dr. Arthurs' notes from a March 7, 2013 follow-up appointment with Plaintiff, Dr. Arthurs began recommending that Plaintiff attempt physical therapy. *See id.* at 258. Dr. Arthurs' notes from May 2012 through June 2013 do not indicate whether Plaintiff followed through with physical therapy.

C.    Plaintiff Requested a Hearing Before the Administrative Law Judge

On or around February 13, 2014, Plaintiff requested a hearing by an administrative law judge ("ALJ"). *See id.* at 96. ALJ Tamara Turner-Jones held the hearing on August 6, 2014. *See id.* at 25-59 (transcript of hearing). Frank Ury, Esq. represented Plaintiff at the hearing. *See id.* at 25.

At the hearing, Plaintiff testified about her daily activities and how she had difficulty completing household chores. *See, e.g.*, *id.* at 33-37. Plaintiff testified that she fell three times "last year," but initially did not provide specific

4

dates.  *See id.* at 40.  Plaintiff later stated that her first fall occurred at or around the

end of 2012 or beginning of 2013.  *See id.* at 47.  Plaintiff also testified that she

tried physical therapy, but stopped going because she "went down after a few visits

from that."  *Id.* at 40.  Again, Plaintiff did not provide specific dates for when she

attempted physical therapy.

In addition, Plaintiff testified about her past work experience.

Plaintiff testified that her most recent employment was in 2011 as a real estate

agent selling timeshares.  *See id.* at 48.  Plaintiff also testified that she previously

worked as a bank teller in 2009.  *See id.* at 48-49.  In addition, Plaintiff worked full

time as a real estate agent from April 2005 through 2006, and as a bank teller from

2001 to 2005.  *See id.* at 50.  According to Plaintiff's Work History Report,

Plaintiff also worked as a cleaner from February 2008 to January 2009.  *See id.* at

176, 180.

A vocational expert testified after Plaintiff.  *See id.* at 50-58.  The

vocational expert testified regarding Plaintiff's ability to perform past relevant

work.  No other witnesses testified at the hearing.

D.     Dr. Arthurs' Medical Source Statements

Dr. Arthurs submitted two medical source statements ("MSS") to the

SSA on Plaintiff's behalf.  *See id.* at 344-52.  The first MSS is dated June 30, 2014

("6/30/14 MSS").  *See id.* at 344-49.  Although unclear, it appears that Plaintiff

submitted the 6/30/14 MSS before the hearing. Plaintiff submitted Dr. Arthurs'

second MSS, dated August 12, 2014 ("8/12/14 MSS"), after the hearing. *See id.* at

350-52. In the 6/30/14 MSS and the 8/12/14 MSS (collectively, "MSS Forms"),

Dr. Arthurs appears to rely upon Plaintiff's 2005 MRI results for his conclusions

therein. *See id.* at 347-48, 351-52.

      E.      The ALJ's Denied Social Security Disability Insurance Benefits

      On December 29, 2014, the ALJ denied Plaintiff Social Security

disability insurance benefits, concluding that Plaintiff had not established a

disability as of June 30, 2013. *See id.* at 12-20. On or around January 23, 2015,

Plaintiff submitted a request to the Appeals Council to review the ALJ's decision.

*See id.* at 7; *see also id.* at 233-35. By letter dated May 10, 2016, the Appeals

Council notified Plaintiff that it had denied her request, finding no reason to review

the ALJ's decision. *See id.* at 1-3. The Appeals Council also informed Plaintiff

the Social Security Commissioner ("Commissioner") had adopted the ALJ's

decision as the final decision in Plaintiff's case. *See id.* at 1. Plaintiff timely

appealed.

## II.   STANDARD OF REVIEW

A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner.  A reviewing district court will not disturb a final decision by the Commissioner denying Social Security disability benefits if the decision is free of legal error and supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *see also Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016) (reviewing a district court's decision de novo).  Even if a decision is supported by substantial evidence, it "will still be set aside if the ALJ did not apply proper legal standards."  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014).

In determining the existence of substantial evidence, the reviewing district court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the Commissioner's factual conclusions.  *See id.*  "Substantial evidence means more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  "If the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner."  *Id.* (internal citation and quotation marks omitted).  Rather, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  *Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (other citation

omitted) (citing 42 U.S.C. § 405(g)).

III.   <u>ANALYSIS</u>

The requirements for establishing a claim for Social Security

disability benefits is well established in the Ninth Circuit:

> To establish a claimant's eligibility for disability benefits under the
> Social Security Act, it must be shown that:  (a) a claimant suffers from
> a medically determinable physical or mental impairment that can be
> expected to result in death or that has lasted or can be expected to last
> for a continuous period of not less than twelve months; and (b) the
> impairment renders the claimant incapable of performing the work
> that the claimant previously performed and incapable of performing
> any other substantial gainful employment that exists in the national
> economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C.

§ 423(d)(2)(A)).  A claimant must satisfy both requirements in order to qualify as

"disabled" under the Social Security Act.  *Id.*

A.     The SSA's Five-Step Process for Determining Disability

The Social Security regulations set forth a five-step sequential process

for determining whether a claimant is disabled.  *Dominguez v. Colvin*, 808 F.3d

403, 405 (9th Cir. 2014); *see* 20 C.F.R. § 404.1520(a)(4).  "If a claimant is found

to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to

consider subsequent steps."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir.

2005); *see* 20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof as

to steps one through four, whereas the burden shifts to the Commissioner for step five. *Tackett*, 180 F.3d at 1098.

At step one, the ALJ will consider a claimant's work activity, if any. 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds the claimant is engaged in substantial gainful activity, the ALJ will determine that the claimant is not disabled, regardless of the claimant's medical condition, age, education, or work experience. *Id.* § 404.1520(b). Substantial gainful activity is work that is defined as both substantial – *i.e.*, work activity involving significant physical or mental activities – and gainful – *i.e.*, work activity done for pay or profit. *See id.* § 404.1572. If the ALJ finds that the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. *Tackett*, 180 F.3d at 1098.

Step two requires that the ALJ consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Only if the claimant has an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities" will the analysis proceed to step three. *Id.* § 404.1520(c). If not, the ALJ will find the claimant is not disabled and the analysis stops. *Id.* § 404.1520(a)(4)(ii).

The severity of the claimant's impairments is also considered at step three. *Id.* § 404.1520(a)(4)(iii). Here, the ALJ will determine whether the claimant's impairments meet or equal the criteria of an impairment specifically

described in the regulations. *Id.*; *see also* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairments meet or equal these criteria, the claimant is deemed disabled and the analysis ends. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the analysis proceeds to step four. *Id.* § 404.1520(e).

Step four first requires that the ALJ determine the claimant's residual functional capacity. *Id.* Residual functional capacity ("RFC") is defined as the most the claimant can still do in a work setting despite her physical and mental limitations. *See id.* § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ will consider all of the relevant evidence in the claimant's case record regarding both severe and non-severe impairments. *Id.* § 404.1545(a)(2). This assessment is then used to determine whether the claimant can still perform her past relevant work. *Id.* § 1520(e). Past relevant work is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). The ALJ will find that the claimant is not disabled if she can still perform her past relevant work, at which point the analysis will end. Otherwise, the ALJ moves on to step five.

In the fifth and final step, the ALJ will once again consider the claimant's RFC as well as her age, education, and work experience, to determine whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(v). Here, the Commissioner is responsible for providing "evidence that demonstrates that other

work exists in significant numbers in the national economy that [the claimant] can do." *Id.* § 404.1560(c)(2). If the claimant is unable to perform other work, she is deemed disabled; if she can make an adjustment to other available work, she is considered not disabled. *See id.* § 404.1520(g)(1).

B.     The ALJ's Decision

At step one, where the ALJ considers the claimant's work activity, the ALJ found that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of May 5, 2012 through her date of last insured of June 30, 2013." AR at 14. At step two, where the ALJ considers the medical severity of the claimant's impairments, the ALJ found that Plaintiff suffered severe impairments from "degenerative disc disease of the lumbar spine and obesity." *Id.* At step three, where the ALJ considers whether the claimant's impairments meet or equal the criteria of an impairment specifically described in the regulations, the ALJ found that, as of the date of last insured, Plaintiff did not have an impairment that "met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 15. Plaintiff agrees with the ALJ's findings with respect to steps one through three. *See* ECF No. 21 at 9.

At step four, where the ALJ determines the claimant's RFC, the ALJ found that, as of the date last insured, Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b)" with certain exceptions:

[S]he is able to lift/carry ten pounds frequently and 20 pounds occasionally. Further, she is able to sit, stand and/or walk for six hours out of an eight-hour workday with customary breaks provided she is able to alternative positions between sitting and standing at one hour intervals for one to five minutes at the workstation. She is capable of climbing ramps and stairs, kneeling, stooping, crawling and crouching on an occasional basis while being restricted from climbing ladders, ropes or scaffolds. Additionally, she is able to perform overhead reaching above shoulder level with both upper extremities occasionally and has no limitations with her fine or gross manipulations.

AR at 15.

Based on Plaintiff's RFC and the vocational expert's testimony at the hearing, the ALJ also determined that Plaintiff was capable of performing her past relevant work as a real estate agent and bank teller. *See id.* at 19. The ALJ thus concluded that Plaintiff was not disabled at any time from her alleged onset date, May 5, 2012, through her date of last insured, June 30, 2013. *See id.* at 20. Accordingly, the ALJ ended her analysis and did not proceed to step five.

C.    Plaintiff's Arguments

1.    Whether the ALJ erred in assigning "little weight" to Dr. Arthurs' medical opinions in the MSS Forms

In her Opening Brief, Plaintiff argues that the ALJ improperly rejected Dr. Arthurs' opinions in the MSS Forms because they were: (i) in checklist format; (ii) inconsistent with each other; and (iii) based only on Plaintiff's subjective complaints. *See* ECF No. 21 at 16-19. Plaintiff thus appears to argue that the ALJ improperly weighed Dr. Arthurs' opinions in the MSS

Forms.  For the reasons set forth below, the Court affirms the ALJ's findings on this issue.

a.    Standards for Weighing Medical Opinion Evidence

In assessing whether or not a claimant is disabled, the ALJ must "develop the record and interpret the medical evidence," considering the "combined effect" of all of claimant's impairments, regardless of whether any one impairment, considered alone, would be of sufficient severity." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing 20 C.F.R. § 416.923). Ultimately, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Ukolov*, 420 F.3d at 1004 (quotation marks and citation omitted).  A treating physician's opinion should be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (alteration in original).  "To reject an uncontradicted opinion of a treating physician, the ALJ must provide clear and

convincing reasons that are supported by substantial evidence." *Id.* at 1160-61 (internal quotation marks and citation omitted).

"Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it." *Id.* at 1161. Rather, in determining how much weight to afford the treating physician's medical opinion, the ALJ must consider factors such as treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion with medical evidence, and consistency with the record as a whole. *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). An ALJ may only reject a contradicted treating physician's opinion by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

> b.    The ALJ's reasons for discounting Dr. Arthurs' opinions

Although the ALJ did not reject the opinions in Dr. Arthurs' MSS Forms in their entirety, the ALJ assigned them "little weight." *See* AR at 18. The ALJ explained that her reasons for doing so were because the opinions were "vague, inconsistent and inconsistent with treatment notes." *See id.* For the reasons set forth below, the Court concludes that the ALJ's reasons were "specific and legitimate," and are supported by substantial evidence in the record.

i.    Dr. Arthurs' opinions were vague

The ALJ noted that the MSS Forms are check-box forms and cited caselaw for the proposition that such "'checklist opinions are weak evidence at best.'" *Id.* (other citations omitted) (citing *Negrete v. Barnhart*, 186 Fed. Appx. 734 (9th Cir. 2006); *Mason v. Shall*, 994 F.2d 1958, 1065 (3d Cir. 1993)). The Ninth Circuit Court of Appeals has held that "the ALJ 'may permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (alterations in *Molina*) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than to those that are not.")). "Further, an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings . . . ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2009) (internal citations omitted). Here, although Dr. Arthurs did provide handwritten notes in addition to his check-box answers, such notes were conclusory and brief. *See* AR at 347-49. Furthermore, such notes conflicted with Dr. Arthurs' own treatment notes and are, therefore, not supported by the record as a whole. Thus, the ALJ properly discounted Dr. Arthurs' opinions.

Plaintiff argues that "[w]here a check-box form is used by a physician who has had significant experience with the Plaintiff and is supported by numerous records it is entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." ECF No. 21 at 16. In support of this argument, Plaintiff relies upon *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014). *Garrison*, however, is distinguishable from this case because, as explained below, Dr. Arthurs' own treatment notes do not support his opinions in the MSS Forms. Thus, the Court concludes that the ALJ did not err on this issue.

ii.    Dr. Arthurs' opinions were contradictory

The ALJ discounted Dr. Arthurs' opinions based on her finding that the MSS Forms contained contradictory opinions. *See* AR at 18. In her Opening Brief, Plaintiff argues that Dr. Arthurs' opinions are not contradictory because "each report covered a different time period." ECF No. 21 at 17. The Court finds that Plaintiff's argument unclear and unsupported by the MSS Forms.[4] The only reference to a specific time period is in the 6/30/14 MSS, which asked, "Has Carla's condition existed and persisted with the restrictions as outlined in this Medical Source Statement at least since you started treating Carla in May 2012?" AR at 349. In response, Dr. Arthurs checked, "Yes." *Id.* The 8/12/14 MSS

---

[4] Although Plaintiff's argument contains citations to the record, the Court notes that the cited pages do not exist. *See* ECF No. 21 at 17 (citing to pages 424 and 427 of the record, which ends at page 352).

contained no such time period restriction. *See id.* at 351-52. Thus, the Court

disagrees with Plaintiff's argument that the MSS Forms were not contradictory

because they covered different time periods.

As set forth above, an ALJ may only reject a contradicted treating

physician's opinion by providing "specific and legitimate reasons that are

supported by substantial evidence." *Ghanim*, 763 F.3d at 1161. In deciding to

discount Dr. Arthurs' opinions, the ALJ specifically cited the inconsistency

between Dr. Arthurs' initial opinion in the 6/30/14 MSS that Plaintiff "could not

lift/carry any weight [and] his opinion two months later [in the 8/12/14 MSS]

reporting that she was able to carry up to 20 pounds occasionally." *Id.* At the

same time, Dr. Arthurs also stated in both MSS Forms that Plaintiff "could only

rarely bend while being able to sit for only 15 minutes at a time and stand/walk for

five minutes at one time." *Id.* Moreover, Dr. Arthurs opined in the 6/30/14 MSS

that Plaintiff could continuously sit for a maximum of one hour before having to

alternate postures, but later opined in the 8/12/14 MSS that Plaintiff would only be

able to sit for less than 15 minutes. *Compare id.* at 344 (6/40/14 MSS), *with id.* at

351 (8/12/14 MSS). Based on the foregoing, the Court concludes that the record

contains substantial evidence to support the ALJ's decision to discount

Dr. Arthurs' contradictory opinions.

iii.    Dr. Arthurs' opinions conflicted with his treatment notes

The ALJ also discounted Dr. Arthurs' opinions because they conflicted with his treatment notes. *See id.* at 18. "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim*, 763 F.3d at 1161 (citing *Molina*, 674 F.3d at 1111-12) (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician assistant's opinions); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject a treating physician's opinion)).

The ALJ found that Plaintiff "consistently presented with normal physical findings including normal gait, normal sensation, no tenderness or muscle spasm and ability to bend forward and touch her fingers to her toes with straight needs as well as squat and easily arise to standing until June 2014." AR at 19. Upon review of the record, the Court finds that Dr. Arthurs' treatment notes support the ALJ's finding. *See id.* at 250, 262, 265, 268, 271, 274, 277, 280, 253, 258, 260, 309, 313-14, 315-16 (Dr. Arthurs' treatment notes from May 2012 through June 2013 consistent with the ALJ's finding). Significantly, Dr. Arthurs' treatment notes from Plaintiff's June 21, 2013 appointment, nine days before her date of last insured, stated: (i) "Patient denies arthritis symptoms, osteoporosis,

back pain;" and (ii) "Able to forward bend and touch fingers to toes with straight knees. Able to squat and easily arise to standing." *Id.* at 315, 316. These treatment notes conflict with the 6/30/14 MSS, in which Dr. Arthurs opined that Plaintiff has reduced range of motion and that "lumbar spine forward bending causes pain with minimal flexion." *Id.* at 347. Dr. Arthurs' treatment notes also conflict with his opinion that Plaintiff suffered from sensory loss, absent reflex, positive straight leg raise, and was unable to squat. *See id.*

Furthermore, Dr. Arthurs' treatment notes conflict with his opinions in the 8/12/14 MSS. For example, when asked how often Plaintiff could bend forward from a standing and sitting position, Dr. Arthur selected "Rarely/None [or] No sustained/8 hours." *See id.* at 351. Dr. Arthurs also opined that Plaintiff suffered severe pain "which [was] exacerbated by sitting, standing, bending lifting." *See id.* at 352. Given the conflicts between Dr. Arthurs' treatment notes and his opinions in the MSS Forms, the Court concludes that the ALJ properly discounted Dr. Arthurs' opinions.

      iv.    Whether the ALJ's decision to discount Dr. Arthurs' opinions was because his opinions were based solely on Plaintiff's subjective complaints

Plaintiff argues that the ALJ erred in finding that Dr. Arthurs' opinions appeared to be based only on Plaintiff's subjective complaints and in rejecting such opinions as a result. *See* ECF No. 21 at 18. Although unclear,

Plaintiff appears to refer to the ALJ's statement, "Therefore, the undersigned gives these opinions little weight as they are vague and inconsistent giving the impression that they are based upon the claimant's subjective complaints and not on the clinical findings." AR at 19. The Court disagrees that the ALJ made a finding that Dr. Arthurs' opinions were based solely on Plaintiff's subjective complaints, or that such complaints were a reason the ALJ discounted Dr. Arthurs' opinions. At an earlier part in her decision, the ALJ had already stated and explained her reasons for discounting Dr. Arthurs' opinions. *See id*. at 18-19. Thus, the Court finds that the ALJ did not commit error as to this issue.

Based upon the foregoing, the Court concludes that the ALJ did not err in assigning "little weight" to Dr. Arthurs' opinions in the MSS Forms.

2. Whether the ALJ erred in finding that there are no current studies showing that Plaintiff's condition had persisted or grown worse

The ALJ's decision stated, "[w]hile [Plaintiff's] 2005 MRI of her lumbar spine showed a posterior disc herniation at the LS-S1[sic] with possible nerve root compromise there are no current studies showing that this condition has persisted or has grown worse." *Id.* at 17. Plaintiff's Opening Brief asserts that, by making this statement, the ALJ improperly substituted her medical opinion for those of Dr. Arthurs and the non-examining physicians. *See* ECF No. 21 at 19. In her Answering Brief, Defendant argues that Plaintiff's assertion overlooks the fact that the 2005 MRI was done approximately seven years prior to the alleged

disability onset date.  *See* ECF No. 25 at 17.  Defendant further points out that

Plaintiff's assertion conflicts with her hearing testimony that she worked a full-

time job until October 2011.  *See id.* (citing AR at 32, 176, 340-41).  In the Reply,

Plaintiff contends that Defendant's arguments constitute a *post hoc* attempt to

rationalize the ALJ's decision.  *See* ECF No. 26 at 2.

        "Long-standing principles of administrative law require [the court] to

review the ALJ's decision based on the reasoning and factual findings offered by

the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator

might have been thinking."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,

1225 (9th Cir. 2009).  Here, when the ALJ discussed the 2005 MRI and the lack of

"current studies," she did not emphasize that seven years had passed until

Plaintiff's alleged onset date, nor did she note Plaintiff's subsequent ability to

work.  *See* AR at 17.  Rather, the ALJ made this statement in the context of

determining the lack of evidence that Plaintiff's back injury had persisted, grown

worse, or was not already well-managed with medication.  *See id.*  Thus, the Court

agrees with Plaintiff that Defendant's arguments are *post hoc* rationalizations that

are not supported by the ALJ's reasoning in her decision.

        Notwithstanding Defendant's unsupported *post hoc* rationalizations,

the Court disagrees with Plaintiff's assertion that the ALJ improperly substituted

her medical opinions for those of the other physicians in this case.  As noted above,

the ALJ had a duty to "interpret the medical evidence" in determining Plaintiff's RFC. *Howard*, 341 F.3d at 1012. "'Even when the evidence is susceptible to more than one rational interpretation, [courts] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.'" *Ghanim*, 763 F.3d at 1159-60 (quoting *Molina*, 674 F.3d at 1111). Here, the Court finds that the ALJ reasonably inferred that Dr. Arthurs' treatment notes and apparent decision not to order a more "current study" indicated that Plaintiff's condition had not worsened since the 2005 MRI and that her pain was well managed with medication. Thus, the Court concludes that the ALJ did not err on this issue.

3. Whether the ALJ erred in failing to consider evidence regarding physical therapy

Plaintiff argues that the ALJ improperly discounted Plaintiff's subjective complaints based on the ALJ's findings that Plaintiff did not appear to follow through with Dr. Arthurs' recommendations for physical therapy. *See* ECF No. 21 at 20. The Court construes Plaintiff's argument as one that the ALJ failed to discuss certain evidence regarding Dr. Arthurs' recommendation of, and Plaintiff's participation in, physical therapy. Specifically, Plaintiff argues that the ALJ failed to consider: (i) Dr. Arthurs' referral to Dr. Ray, a pain management specialist; (ii) Plaintiff's hearing testimony that she attended physical therapy; and (iii) Dr. Arthurs' mention of "Plaintiff's physical therapy history on two occasions." *See id.* at 20.

The Ninth Circuit Court of Appeals has held that "[t]he ALJ is not required to discuss evidence that is neither significant nor probative." *Howard*, 341 F.3d at 1012 (citation omitted). Although Plaintiff's Opening Brief cites to the record, the cited pages either do not exist in the record or do not contain information supporting her arguments. It appears to the Court, based on its own review of the record, that Plaintiff intended to cite to pages in Dr. Arthurs' treatment notes dated December 16, 2013 (AR at 331), June 30, 2014 (AR at 342), as well as his 6/30/14 MSS (AR at 349).

The parties do not dispute that Plaintiff was required to establish a disability on or before her date of last insured, June 30, 2013, to be entitled to disability insurance benefits. *See* ECF No. 21 at 13; ECF No. 25 at 16. Thus, the crucial period for evidence of Plaintiff's alleged disability is between May 5, 2012 and June 30, 2013. The evidence regarding physical therapy at issue, however, concerns Plaintiff's treatment after the date of last insured. Thus, the Court concludes that such evidence was neither significant nor probative, and the ALJ was not required to discuss it. *See Howard*, 341 F.3d at 1012; *see also Cline v. Astrue*, No. ED CV 08-463-PLA, 2009 WL 2163507, at *4 (E.D. Cal. July 16, 2009) (holding that ALJ was not required to discuss a treating physician's opinions in a report prepared three years after the plaintiff's date of last insured); *c.f. Jones v. Berryhill*, No. 14-35314, 2017 WL 1130243, at *1 (9th Cir. Mar. 27, 2017)

(citing *Howard*) (holding that the ALJ did not err in failing to discuss medical records that "significantly predated" the plaintiff's amended onset date).

IV.    CONCLUSION

For the reasons set forth above, the Court concludes that there is substantial evidence in the record to support the ALJ's finding that Plaintiff did not have a disability on or before June 30, 2013, her date of last insured. Given the standard under which this Court must review the ALJ's findings, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, June 30, 2017.



 /S/ Kenneth J. Mansfield
Kenneth J. Mansfield
United States Magistrate Judge

CV 16-00363 KJM; *Carla Jean Carvalho v. Nancy A. Berryhill* (Order Affirming Decision of Social Security Commissioner)